UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80207-Cr-Middlebrooks

UNITED STATES OF AMERICA

vs.

BRADLEY FORREST ZUCKER,

          Defendant.

_____/

**ACKNOWLEDGMENT OF OFFENSE ELEMENTS AND STIPULATION AS TO FACTUAL BASIS FOR GUILTY PLEA**

I, BRADLEY FORREST ZUCKER, agree that the facts set forth below are true and accurate and that the United States could prove these facts against me at trial. I am pleading guilty to two counts in the Indictment which charge me with: <u>Count One</u> - attempt to possess with intent to distribute a controlled substance (more than 500 grams of a mixture and substance containing methamphetamine), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846; and <u>Count Two</u> - possession with intent to distribute a controlled substance (more than 500 grams of a mixture and substance containing methamphetamine), in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(A)(viii).

**NATURE OF THE CHARGES**

I am aware of and understand the nature of the charges to which I am pleading guilty. I have discussed with my attorney the charges and what the prosecutor must prove to convict me.

**<u>Count 1</u> - Attempt to possess with intent to distribute a controlled substance (more than 500 grams of a mixture and substance containing methamphetamine), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846.**

The Defendant can be found guilty of attempt to possess with intent to distribute a controlled substance (more than 500 grams of a mixture and substance containing methamphetamine) only if the following facts are proved beyond a reasonable doubt:

First:        The defendant knowingly intended to commit the crime of possessing

1

        with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine; and

Second:  The defendant's intent was strongly corroborated by him taking a substantial step toward committing the crime.

A "substantial step" is an important action leading up to committing an offense – not just an inconsequential act. It must be more than simply preparing. It must be an act that would normally result in committing the offense.

**Count 2 - Possession with intent to distribute a controlled substance (more than 500 grams of a mixture and substance containing methamphetamine), in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(A)(viii).**

The Defendant can be found guilty of possession with intent to distribute a controlled substance (more than 500 grams of a mixture and substance containing methamphetamine) only if the following facts are proved beyond a reasonable doubt:

First:  The defendant knowingly possessed methamphetamine;

Second:  The defendant intended to distribute the methamphetamine; and

Third:  The mixture and substance containing methamphetamine was more than 500 grams.

To "intend to distribute" is to plan to deliver possession of a controlled substance to someone else, even if nothing of value is exchanged.

The Defendant "knowingly" possessed the controlled substance if (1) the defendant knew he possessed a substance listed on the federal schedules of controlled substances, even if the defendant did not know the identity of the substance, or (2) the defendant knew the identity of the substance he possessed, even if the defendant did not know the substance was listed on the federal schedules of controlled substances.

## STIPULATED FACTS

On or about September 26, 2023, United States Postal Inspection Services (USPIS) Task Force Officer (TFO) Henry Ramos identified a suspected drug parcel addressed to be delivered to "Brad

2

Zucker" at his residential address. On September 27, 2023, following a positive alert by a narcotics-trained canine, the parcel was opened pursuant to a federal search warrant. Within the parcel, agents recovered 1,275.4 grams (including package weight) of round, orange, pressed pills, manufactured to look like the brand drug Adderall. Based upon the agents' training and experience, as well as field testing, the substance found inside the parcel was identified as methamphetamine, a Schedule II controlled substance. The pills were later examined by the DEA Southeast Laboratory and determined to be 1265.5 grams, $\pm$ 0.2 grams, of Methamphetamine (calc. as Hydrochloride).

On October 2, 2023, federal and local agents attempted to conduct a controlled delivery of the parcel which was filled with sham narcotics weighing over one kilogram. The intended recipient was the defendant, and the delivery was made to his known residential address, which was the address on the parcel. An attempt was made to deliver the package, but no one came to the door. After waiting a couple hours, a woman "G.C." came to the door, looked at the parcel and knocked on the door. When there was no answer, she took hold of the parcel and walked away.

Shortly thereafter, agents with the DEA successfully located G.C. and initiated a consensual encounter with G.C. to ascertain whether she had indeed picked up the parcel. She openly admitted to having picked up the parcel. Furthermore, she disclosed that she had subsequently opened the parcel and removed what she believed to be Adderall, because she had purchased Adderall from ZUCKER on prior occasions. G.C. provided verbal consent to search her backpack. Agents located the sham narcotics which had been previously packaged inside the parcel.

G.C. was promptly detained by agents and transported to a secure facility for the purpose of conducting an interview. Following *Maranda* warnings, she admitted to picking up the parcel based on her assumption that it contained illegal drugs. She went on to clarify that she had previously purchased Adderall pills from ZUCKER at his residence and most recently bought Adderall from ZUCKER on Saturday, September 23, 2023. During her visit, she saw bags filled with what appeared

3

to be Adderall pills stored inside ZUCKER's safe and she observed several firearms visibly scattered throughout the residence. She specifically mentioned that ZUCKER possessed several handguns. On several other occasions while inside ZUCKER's residence, G.C. also saw marijuana, Xanax, and cocaine.

On the same day as the search, agents contacted ZUCKER's mother who informed them that ZUCKER had been admitted to the Delray Medical Center in Delray Beach, Florida. Agents approached ZUCKER in a room at the Delray Medical Center. Prior to initiating any questioning, USPIS TFO Ramos explicitly informed ZUCKER that he had the right to refrain from speaking. USPIS TFO Ramos clarified that ZUCKER was not under any form of detainment and the interview was digitally recorded. During the interview, ZUCKER openly confessed to having purchased his narcotics supply several months ago from a dark web vendor.

DEA TFO Kopplin asked ZUCKER about the contents of the safe located in his apartment. In response, ZUCKER informed TFO Kopplin that the safe contained only marijuana. TFO Kopplin asked for the code to access the safe, to which ZUCKER explained that it was a biometric safe requiring his fingerprint for unlocking. Additionally, ZUCKER informed TFO Kopplin that a key for the safe was hanging on a key ring near the apartment door on the wall. ZUCKER also stated that he had firearms inside the safe.

On the same day, October 2, 2023, agents obtained a residential search warrant and conducted a search of ZUCKER's residence. In the living room, agents located a black safe which had a biometric style lock. On a key ring next to the entry door, agents located a key which was used to open the safe in which they located the following items:

(a) a clear vacuum-sealed bag containing round orange pills imprinted with the number "30" which appeared to be counterfeit Adderall weighing approximately 751.5 grams (including

packaging). The pills were later analyzed by the DEA Southeast Laboratory and determined to be 701.5 grams, $\pm$ 0.2 grams, of Methamphetamine (calc. as Hydrocholoride);

(b) a Sig Sauer handgun, Model "P320," serial number 58J086134;

(c) a Sig Sauer handgun, Model "P365," serial number 66B546993;

(d) United States currency; and

(e) various types of personal use amounts of narcotics.

Within the master bedroom area, agents located blue circular shaped pills imprinted "80" weighing approximately 45 grams. Within various areas of the house, agents located multiple boxes containing 9mm ammunition (approximately 15 boxes capable of containing 50 rounds of ammunition).

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 1/26/24   By: _____
DANIEL E. FUNK
ASSISTANT UNITED STATES ATTORNEY

Date: 1/26/24   By: _____
GREGG S. LERMAN
ATTORNEY FOR DEFENDANT

Date: 1/26/24   By: _____
BRADLEY FORREST ZUCKER
DEFENDANT